**FILED**
**United States Court of Appeals**
**Tenth Circuit**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**October 16, 2023**

_____

**Christopher M. Wolpert**
**Clerk of Court**

LEISL M. CARPENTER,

      Plaintiff - Appellant,

v.

THOMAS J. VILSACK, in his official
capacity as Secretary of the United States
Department of Agriculture; ZACH
DUCHENEAUX, in his official capacity as
Administrator of the Farm Service Agency,

      Defendants - Appellees.

No. 22-8079
(D.C. No. 2:21-CV-00103-NDF)
(D. Wyo.)

SARA M. ROGERS,

      Plaintiff - Appellant,

v.

THOMAS J. VILSACK, in his official
capacity as Secretary of the United States
Department of Agriculture; ZACH
DUCHENEAUX, in his official capacity as
Administrator of the Farm Service Agency,

      Defendants - Appellees.

No. 23-1122
(D.C. No. 1:21-CV-01779-DDD-SKC)
(D. Colo.)

_____

# ORDER AND JUDGMENT[*]

Before **PHILLIPS**, **BALDOCK**, and **McHUGH**, Circuit Judges.

Leisl M. Carpenter is one of more than a dozen farmers and ranchers who filed lawsuits against Appellees Thomas J. Vilsack, the Secretary of the United States Department of Agriculture, and Zach Ducheneaux, the Administrator of the Farm Service Agency,[1] challenging the constitutionality of § 1005 of the American Rescue Plan Act of 2021. While Ms. Carpenter's suit was pending in the District of Wyoming, Congress repealed § 1005. The district court determined the repeal mooted Ms. Carpenter's claims and dismissed the case for lack of subject matter jurisdiction.

Sara M. Rogers, represented in part by the same counsel as Ms. Carpenter, filed a nearly identical lawsuit in the District of Colorado. Her case was also dismissed on mootness grounds. On appeal, Ms. Rogers' case was partially consolidated with Ms. Carpenter's case. Ms. Rogers relies on Ms. Carpenter's briefing and argument and agrees to be bound by the decision on Ms. Carpenter's appeal.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

[1] Appellees are responsible for administering the relevant loan forgiveness program and Ms. Carpenter sues them in their official capacities.

Ms. Carpenter maintains she suffered and continues to suffer an equal protection injury due to § 1005. We disagree and affirm the district courts' dismissals because the cases are moot.

## I.        BACKGROUND

### A.        *Factual History*

### 1.        The American Rescue Plan Act of 2021, § 1005

In March 2021, Congress enacted the American Rescue Plan Act of 2021 ("ARPA"). Pub. L. 117-2, 135 Stat. 4. Section 1005 of ARPA appropriated "such sums as may be necessary" to pay up to 120% of the outstanding indebtedness on direct farm loans and guaranteed farm loans for "each socially disadvantaged farmer or rancher." ARPA § 1005(a). Section 1005(b)(3) gives "socially disadvantaged farmer or rancher" the same meaning as in the Food, Agriculture Conservation, and Trade Act of 1990, which defines a "socially disadvantaged farmer or rancher" as "a farmer or rancher who is a member of a socially disadvantaged group." 7 U.S.C. § 2279(a)(5). The statute further defines "socially disadvantaged group" as "a group whose members have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities." *Id.* § 2279(a)(6). In its "Notice of Funds Availability," the agency specified that § 1005 funds were limited to farmers and ranchers who were from a socially disadvantaged group, including but not limited to Blacks or African Americans, Asians, Hispanics or Latinos, American Indians or Alaskan Natives, or Native Hawaiians or other Pacific Islanders. 86 Fed. Reg. 28,329, 28,330

(May 26, 2021). The agency also announced that receiving loan forgiveness under § 1005 would not prevent farmers and ranchers from obtaining future farm loans.[2]

Constitutional challenges to § 1005 arose almost immediately. At least twelve cases were filed in federal district courts. In an action in the Eastern District of Wisconsin, William Cobb—a United States Department of Agriculture ("USDA") administrator responsible for overseeing farm loan programs—filed a declaration explaining that the Farm Service Agency ("FSA") had mailed five offer letters to eligible recipients in New Mexico "to test the effectiveness of the procedures FSA established to deliver ARPA Section 1005 payments." App. at 253. FSA had selected New Mexico in part because it had a relatively large volume of direct loan borrowers eligible for ARPA relief and "a high level of experienced staff." *Id.* "The eligible accounts were selected based on the borrowers being sole proprietorships rather than entities, and past interactions with FSA that reflected a willingness to be part of a pilot initiative." *Id.* Four of the eligible recipients accepted the offers and payments were processed between June 3 and June 8, 2021. Mr. Cobb stated that FSA anticipated beginning to send offer letters for 8,580 accounts on June 9, 2021, expecting the mailings to be completed within two weeks of that date. FSA estimated it would take nine weeks to complete the other 6,836 accounts that required FSA to calculate reversals of 2021 payments to date before sending offer letters. Extrapolating from these statements, it appears FSA expected all

---

[2] This practice would represent a departure from 7 U.S.C. § 2008h(b), which, with certain exceptions, prohibits the Secretary of Agriculture from making and guaranteeing loans to borrowers who have received debt forgiveness, as defined in the statute.

offer letters to be sent, acceptances received, and payments processed by the end of August 2021.

On June 10, 2021, however—the day after FSA was to begin sending offer letters, according to Mr. Cobb—the Eastern District of Wisconsin issued a temporary restraining order enjoining any loan forgiveness under § 1005. *Faust v. Vilsack*, 519 F. Supp. 3d 470, 478 (E.D. Wis. 2021). Other district courts then preliminarily enjoined the implementation of § 1005. *See Wynn v. Vilsack*, 545 F. Supp. 3d 1271, 1295 (M.D. Fla. 2021); *Holman v. Vilsack*, No. 1:21-cv-1085, 2021 WL 2877915, at *14 (W.D. Tenn. July 8, 2021); Order on Class Certification & Prelim. Inj. at 23–24, *Miller v. Vilsack*, No. 4:21-cv-595 (N.D. Tex. July 2, 2021), ECF No. 60.

On August 16, 2022, President Biden signed the Inflation Reduction Act of 2022 expressly repealing ARPA § 1005. Pub. L. No. 117-169 § 22008, 136 Stat. 1818, 2023 (2022). The parties in at least one case challenging § 1005 subsequently stipulated to dismissal based on mootness.

## 2.    Appellants

According to Ms. Carpenter's complaint (the "Complaint"), Ms. Carpenter is a Wyoming cattle rancher and young mother whose Danish, Norwegian, and Swedish ancestors homesteaded her property in 1894. The ranch is her family's sole source of income. Ms. Carpenter took out an FSA loan in 2012. In the Complaint, Ms. Carpenter alleges she would be eligible for loan forgiveness under § 1005, and for future FSA loans after such forgiveness, if she were not white.

Ms. Rogers similarly asserts that she is a Colorado grain farmer and mother of young children who supports her family entirely from the farm. Like Ms. Carpenter, Ms. Rogers asserts she would be eligible for ARPA loan forgiveness, but for her race.

### B.    *Procedural History*[3]

### 1.    Complaint

Ms. Carpenter filed a Complaint in the District of Wyoming in May 2021. She claimed § 1005 violated the Equal Protection Clause of the Fifth Amendment. She also claimed USDA's promise that those who receive loan forgiveness under ARPA would continue to be eligible for future loans violated a pre-existing law forbidding USDA loans to past recipients of loan forgiveness.[4] *See* 7 U.S.C. § 2008h(b). Ms. Carpenter requested (1) a declaratory judgment that the racial classifications in ARPA are unconstitutional; (2) a declaratory judgment that Ms. Carpenter is eligible to receive loan forgiveness under ARPA; (3) a declaratory judgment that further loans to those who receive ARPA loan forgiveness is unlawful; (4) a permanent injunction against applying

---

[3] Because Ms. Rogers has agreed to be bound by the decision on Ms. Carpenter's appeal, *see* Order Granting in Part Ms. Rogers' Motion to Consolidate, *Rogers v. Vilsack*, No. 23-1122 (10th Cir. May 30, 2023), we focus our discussion of the procedural history on Ms. Carpenter's case.

[4] On its face, this claim is based on a conflict between § 1005 and another statute, not the Equal Protection Clause. The degree to which this claim was moot was neither briefed nor decided in the district court and Ms. Carpenter raises no separate argument about this claim on appeal, waiving any such argument. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005) ("[I]ssues will be deemed waived if they are not adequately briefed." (alteration in original) (quotation marks omitted)).

racial classifications to determine eligibility for ARPA relief; (5) a permanent injunction

against declaring Ms. Carpenter ineligible for future FSA loan participation to the extent

such participation is permitted for recipients of ARPA relief; (6) alternatively, an

injunction against administering § 1005 of ARPA; (7) nominal damages of one dollar;

(8) costs and attorney fees; and (9) "such other and further relief as the Court deems

appropriate." App. at 21.

2.    **Motion to Stay**

In July 2021, Appellees moved to stay the proceedings pending resolution of

*Miller v. Vilsack*, a class action in the Northern District of Texas. *See* Order on Class

Certification & Prelim. Inj., *Miller v. Vilsack*, No. 4:21-cv-595 (N.D. Tex. July 2, 2021),

ECF No. 60. The Northern District of Texas had certified two classes of farmers and

ranchers challenging § 1005 on equal protection grounds, and Ms. Carpenter was a

mandatory member of both classes. *Id.* at 5–15, 23. The court had also issued a

preliminary injunction against disbursing funds under § 1005. *Id.* at 23–24. Ms. Carpenter

opposed a stay, arguing that she had no control over the class action proceedings and that

the issues were not identical because the class action did not include a challenge to

ARPA relief recipients' eligibility for future FSA loans, as hers did. She pointed out that

another district court had denied a stay in a similar case. *See* Order, *Holman v. Vilsack*,

No. 1:21-cv-1085 (W.D. Tenn. Aug. 2, 2021), ECF No. 49. In August 2021, the District

of Wyoming nevertheless stayed Ms. Carpenter's case, pending resolution of *Miller*.

3.     **Motion to Dismiss as Moot**

In an August 2022 status report, Appellees notified the district court that ARPA

§ 1005 had been repealed by the Inflation Reduction Act of 2022. In September 2022,

Appellees notified the district court that the parties in *Miller* had stipulated to dismissal

based on mootness. Joint Stipulation of Dismissal, *Miller v. Vilsack*, No. 4:21-cv-595

(N.D. Tex. Aug. 29, 2022), ECF No. 236. Unable to obtain agreement from

Ms. Carpenter for a similar stipulated dismissal based on mootness, Appellees filed a

motion to lift the stay and dismiss the case as moot.

Ms. Carpenter opposed the motion, submitting Mr. Cobb's declaration and an

unidentified online article to support her claim that USDA had distributed some benefits

to others under § 1005 because USDA had provided debt relief on at least four loans,

offered to forgive a fifth loan, and "likely credited back hundreds of loan payments to

certain borrowers," based solely on race. App. at 228. She argued that because she was

ineligible for those benefits, she suffered differential treatment on the basis of her race, an

injury that repeal of the statute did not undo. She requested that the effects of previous

implementation of § 1005 be "unwound" and "the playing field . . . appropriately

equalized" to "restore constitutional balance." *Id.* at 229.

The district court granted the motion to lift the stay and dismiss the case as moot.

The district court reasoned that Ms. Carpenter's request to enjoin application,

implementation, or enforcement of § 1005 was moot because Appellees no longer had

authority to do so. The district court determined Ms. Carpenter's requests for declaratory

relief were moot because such relief would not alter or affect her rights in any way, given

that neither Ms. Carpenter nor anyone else could receive funds under § 1005. Finally, the

district court rejected Ms. Carpenter's argument that her request for "other relief" saved

her case from mootness, explaining that clawing back money from those who received

test payments would not restore any benefit to Ms. Carpenter, whose interest was in loan

repayments she could no longer receive. The district court further opined that

Ms. Carpenter was not injured by the test payments because she could not have been

eligible for them in any case, given that they were made only to New Mexico farmers.

Ms. Carpenter appealed.

## II.    DISCUSSION

Ms. Carpenter challenges the district court's dismissal of her case as moot.

Mootness is a question of law this court reviews de novo. *Rio Grande Found. v. Oliver*,

57 F.4th 1147, 1159 (10th Cir. 2023). Because the district court properly dismissed

Ms. Carpenter's case as moot, we affirm.[5]

### A.    *Mootness Legal Rule*

Article III of the Constitution permits federal courts to decide only "cases" or

"controversies." U.S. Const. art. III, § 2, cl. 1. This requires "a genuine, live dispute

between adverse parties, thereby preventing the federal courts from issuing advisory

opinions." *Carney v. Adams*, 141 S. Ct. 493, 498 (2020). Article III's case-or-controversy

requirement comprises three elements: injury in fact, causation, and redressability. *Steel*

---

[5] After the parties' briefs were filed, both Ms. Carpenter and Appellees
submitted letters with supplemental authorities pursuant to Federal Rule of Appellate
Procedure 28(j). We have reviewed these authorities and conclude they are not
inconsistent with our holding.

*Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04 (1998); *Spencer v. Kemna*,

523 U.S. 1, 7 (1998) ("[T]hroughout the litigation, the plaintiff 'must have suffered, or be

threatened with, an actual injury traceable to the defendant and likely to be redressed by a

favorable judicial decision.'" (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477

(1990))). The case-or-controversy requirement "is built on separation-of-powers

principles [and] serves to prevent the judicial process from being used to usurp the

powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408

(2013). Although the primary concern is jurisdictional, the case-or-controversy

requirement also protects judicial economy, ensuring "the scarce resources of the federal

courts are devoted to those disputes in which the parties have a concrete stake." *Friends*

*of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000).

The doctrines of standing and mootness aim to ensure federal courts stay within

Article III's bounds throughout the litigation.[6] *Brown v. Buhman*, 822 F.3d 1151, 1163

(10th Cir. 2016) ("Standing concerns whether a plaintiff's action qualifies as a case or

controversy when it is filed; mootness ensures it remains one at the time a court renders

its decision."); *see Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 68 n.22 (1997)

(explaining mootness "has been described as 'the doctrine of standing set in a time frame:

The requisite personal interest that must exist at the commencement of the litigation

---

[6] A third doctrine, ripeness, "aims to prevent courts from entangling
themselves in abstract disagreements by avoiding premature adjudication." *Cellport
Sys., Inc. v. Peiker Acustic GMBH & Co. KG*, 762 F.3d 1016, 1029 (10th Cir. 2014)
(quotation marks omitted).

(standing) must continue throughout its existence (mootness)'" (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980))). Even where the plaintiff had standing at the case's inception, if it later becomes evident that one or more elements of an Article III case or controversy is lacking, the claim is moot and the court lacks jurisdiction. *Campbell–Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016); *Schell v. OXY USA, Inc.*, 814 F.3d 1107, 1114 (10th Cir. 2016); *Ind v. Colo. Dep't of Corr.*, 801 F.3d 1209, 1213 (10th Cir. 2015) ("[A] case becomes moot when a plaintiff no longer suffers actual injury that can be redressed by a favorable judicial decision." (internal quotation marks omitted)). "Failure to satisfy the requirements of either doctrine places a dispute outside the reach of the federal courts." *Brown*, 822 F.3d at 1164.[7]

The party invoking federal jurisdiction "bears the burden of establishing standing as of the time it brought [the] lawsuit *and maintaining it thereafter*." *Carney*, 141 S. Ct. at 499 (emphasis added). However, "[t]he 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Friends of the Earth*, 528 U.S. at 189 (alteration in original) (quoting *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968)). We evaluate mootness as to each form of relief requested. *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 880 (10th Cir. 2019).

---

[7] As we explain *infra*, there is one relevant exception to this general rule: the voluntary cessation doctrine.

Material amendment or repeal of a law moots certain legal challenges to the law. *U.S. Dep't of the Treasury v. Galioto*, 477 U.S. 556, 559–60 (1986); *Nat'l Adv. Co. v. City & Cnty. Of Denver*, 912 F.2d 405, 412 (10th Cir. 1990). However, a claim based on a repealed statute is not moot "so long as damages or other monetary relief may be claimed on account of the [repealed] provisions. Other forms of retroactive remedies also may forestall mootness." Charles A. Wright, Arthur R. Miller & Edward H. Cooper, 13C *Federal Practice and Procedure Jurisdiction* § 3533.6 (3d ed. updated Apr. 2023).

With this legal background in mind, we now consider whether the repeal of § 1005 has rendered moot the cases before us.

### B.    Analysis

Although Ms. Carpenter bears the ultimate burden to show a live case or controversy, Appellees bear the "heavy burden" of showing mootness. *Friends of the Earth*, 528 U.S. at 189; *see also Audubon of Kan., Inc. v. U.S. Dep't of Interior*, 67 F.4th 1093, 1102–03 (10th Cir. 2023) (placing the burden to show mootness on the party asserting mootness on appeal). Appellees contend, and the district court held, that repeal of § 1005 mooted Ms. Carpenter's claims. Ms. Carpenter argues that her equal protection claim is not moot because USDA made test payments to some farmers based on their race, while Ms. Carpenter received no such assistance because she is white. She objects to the conclusion that she suffered no injury because she lives in Wyoming. She also contends that the Complaint's failure to specifically request that USDA claw back the disbursed funds does not prevent her from requesting this relief to defeat a mootness

challenge and asserts that various alleged procedural impediments to her requesting such clawbacks are irrelevant to mootness.

We consider each of Ms. Carpenter's arguments in turn, first concluding that she fails to show any injury in fact from the brief existence and partial implementation of the statute. As a result, Ms. Carpenter fails to plausibly show the elements of an Article III case or controversy. Further, to the extent that Ms. Carpenter argues that voluntary cessation saves her claims from mootness, we conclude that doctrine does not apply. Finally, because there is no Article III case or controversy, we need not reach Appellees' alternative arguments based on prudential mootness.

1.      **Elements of a Case or Controversy**

   a.      *Injury in fact*

To satisfy Article III, an injury must be distinct, palpable, and personal. *Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 72 (1978). In the equal protection context, an injury in fact occurs when actual unequal treatment occurs. *See Vacco v. Quill*, 521 U.S. 793, 799 (1997) (explaining that the Equal Protection Clause in the Fourteenth Amendment "creates no substantive rights" and instead "embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly"); *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) ("The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike."); *City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010) (explaining that an equal protection claim challenging school board election law accrued when the election was held and plaintiffs

were unable to vote). As relevant here, an equal protection injury may consist of (1) the denial of a benefit or (2) the denial of equal treatment in accessing the benefit. *See Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993) (pointing to unequal treatment resulting from "a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group" and determining that the "injury-in-fact" in a set-aside program was not simply the loss of a contract with the city but "the inability to compete on an equal footing in the bidding process"); *U.S. Dep't of Treasury, Bureau of Alcohol, Tobacco, and Firearms v. Galioto*, 477 U.S. 556, 559–60 (1986) (determining equal protection claim mooted by amendment of statute that put plaintiffs on equal footing with others); *Turner v. Fouche*, 396 U.S. 346, 362 (1970) ("We may assume that the [plaintiffs] have no right to be appointed to the . . . board of education. But [they] do have a federal constitutional right to be considered for public service without the burden of invidiously discriminatory disqualifications.").

The injunctions against implementation of § 1005 and the section's eventual repeal rendered any equal protection injury impossible. In the Complaint, Ms. Carpenter claimed:

> Although Plaintiff is a rancher with a direct FSA loan, and otherwise eligible for the loan forgiveness program under Section 1005 of ARPA, she is ineligible for this federal benefit because she is white.

> Plaintiff is harmed by the Defendants' racial classifications because, but for Plaintiff's skin color, she would be receiving up to 120% of the value of her outstanding debt and she would use that money to benefit her ranch and family.

14

App. at 19. The Complaint further stated that "[b]ecause [Ms. Carpenter] is ineligible to
receive loan forgiveness solely due to her race, she has been denied the equal protection
of the laws and has therefore suffered harm." *Id.* at 17. Ms. Carpenter alleged that
Appellees would begin processing payment letters under § 1005 the next month.

The only inequality Ms. Carpenter pleaded—race-based ineligibility for loan
forgiveness—did not cause actual injury and no longer exists. There is no allegation in
the Complaint that Appellees ever actually engaged in unequal treatment, and
circumstances have changed such that future injury is impossible. Section 1005 has been
repealed, and Appellees lack authority and funding to engage in the challenged
discrimination. When events during the pendency of the litigation leave no harm to be
redressed, the case is moot, and we lack jurisdiction to consider it further. "[T]o render a
decision on the validity of the now nonexistent [§ 1005] would constitute a textbook
example of advising what the law would be upon a hypothetical state of facts rather than
upon an actual case or controversy as required by Article III of the Constitution."
*Wyoming v. U.S. Dep't of Agric.*, 414 F.3d 1207, 1212–13 (10th Cir. 2005) (internal
quotation marks omitted); *see also Am. Charities for Reasonable Fundraising Regul.,
Inc. v. O'Bannon*, 909 F.3d 329, 331–33 (10th Cir. 2018) (holding that a challenge to
Utah's charitable solicitation registration laws became moot when Utah substantially
revised its law such that the restrictions no longer applied to the plaintiff); *Kan. Jud. Rev.
v. Stout*, 562 F.3d 1240, 1244–46 (10th Cir. 2009) (dismissing a challenge to the Kansas
Code of Judicial Conduct where, while the appeal was pending, the Kansas Supreme
Court adopted a new Code of Judicial Conduct that eliminated the challenged ban on

solicitation and significantly revised the challenged clauses about pledges and commitments).

Arguing against mootness, Ms. Carpenter (1) points to the New Mexico test payments as injuring her and (2) suggests that other implementation might have occurred that might be revealed in discovery if the case were allowed to proceed. On the first point, Ms. Carpenter argues that the fact the test payments were all made in New Mexico, rather than Wyoming, is irrelevant to her claimed injury because the decision to do the test in New Mexico was a "unilateral decision of Appellees in selecting the state residencies of recipients of Section 1005 payments" that was unrelated to the discriminatory statute.[8] Appellant's Br. at 10–11. But it is precisely because the decision to do the test in New Mexico was unrelated to the statutory language that Ms. Carpenter cannot claim an injury based on § 1005's racial distinctions. If Appellees' administration of the test payments can be said to have excluded Ms. Carpenter from consideration at all, it was because she lives in Wyoming rather than New Mexico. Even if she were not white, Ms. Carpenter would have been excluded from the test payments. The test payments to four New Mexico farmers therefore do not constitute an injury to Ms. Carpenter based on the racial distinctions in § 1005.

---

[8] At oral argument, Ms. Carpenter briefly suggested that the selection of New Mexico as the location for test payments was racially motivated, before clarifying that she is *not* arguing that New Mexico should not have been selected for test payments to the isolation of other states. Oral Argument at 13:04–16, *Carpenter v. Vilsack*, No. 22-8079 (10th Cir. Sept. 13, 2023). Consequently, we do not consider this argument.

Ms. Carpenter also suggests there may be an injury yet to be discovered, such as other payments made before courts enjoined implementation of the statute, contending that there has never been a "full accounting of how [§] 1005 was implemented—given that no discovery has taken place." Appellant's Br. at 10. But Ms. Carpenter bears the burden to plead facts showing a live case or controversy. *See Shapiro v. McManus*, 136 S. Ct. 450, 455 (2015) (explaining that a plaintiff must "raise a substantial federal question for jurisdictional purposes" that is not "'wholly insubstantial and frivolous'" (quoting *Bell v. Hood*, 327 U.S. 678, 682–83 (1946))); *Baca v. Colo. Dep't of State*, 935 F.3d 887, 925 (10th Cir. 2019) (finding claim not so frivolous as to defeat subject matter jurisdiction), *rev'd on other grounds*, 140 S. Ct. 2316 (2020). In the Complaint, Ms. Carpenter does not allege other payments were actually made, and she never requested leave to amend the Complaint.[9] Ms. Carpenter continues to disclaim any responsibility to amend her Complaint but suggests that "if this Court is truly concerned about [her] prayer for relief, the proper route is to hold that the dispute is not moot and reverse the District Court with instructions to allow the amendment of the complaint." Reply at 24. She cites *Diffenderfer v. Central Baptist Church of Miami, Florida, Inc.*, 404 U.S. 412, 415 (1972), in which the Supreme Court vacated and remanded a moot

---

[9] There does not appear to have been any impediment to amendment; dismissal for lack of jurisdiction is without prejudice. *See* Fed. R. Civ. P. 41(b); *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006) ("Dismissals for lack of jurisdiction [are] without prejudice because the court, having determined that it lacks jurisdiction over the action, is incapable of reaching a disposition on the merits of the underlying claims."). In fact, Ms. Carpenter acknowledged the possibility of amendment but expressly declined to do so.

17

case because "it is possible that appellants may wish to amend their complaint so as to

demonstrate that the repealed statute retains some continuing force or to attack the newly

enacted legislation." However, in *Diffenderfer*, the statute had become moot on appeal, so

the plaintiff never had the opportunity to amend the complaint to address this change in

the law. *Id.* at 413–14. In contrast, Ms. Carpenter had the opportunity and purposefully

chose not to amend.

Furthermore, Ms. Carpenter's claim that other payments might have been made is

purely speculative; she relies only on an unidentified article from an unnamed website

stating that USDA made $1 million in payments before the program was shut down. In

light of Mr. Cobb's declaration detailing the test payments and schedule for

implementation, and Appellees' representation that the test payments amounted only to

$160,218 and no other payments were made, this is simply not plausible; implementation

was enjoined the day after FSA was to begin mailing offer letters.[10]

Ms. Carpenter next attempts to support her claims of an ongoing equal protection

injury by citing inapposite cases. First, she points to *Jicarilla Apache Nation v. Rio

Arriba County*, 440 F.3d 1202, 1209 (10th Cir. 2006) to argue that, following intervening

legislation, courts still have jurisdiction to address equal protection injuries not addressed

---

[10] Ms. Carpenter objects to relying on Mr. Cobb's declaration as dispositive at
this stage. However, "government[al] actors in their sovereign capacity and in the
exercise of their official duties are accorded a presumption of good faith because they
are public servants, not self-interested private parties." *Rio Grande Silvery Minnow v.
Bureau of Reclamation*, 601 F.3d 1096, 1116 n.15 (10th Cir. 2010) (alteration in
original) (quoting *Sossamon v. Texas,* 560 F.3d 316, 325 (5th Cir. 2009)).
Ms. Carpenter provides no reason to doubt Mr. Cobb's truthfulness.

by the relevant law's amendment or recission. In *Jicarilla Apache Nation*, the New Mexico legislature amended a challenged tax statute in a way that resolved the underlying equal protection issues in the plaintiff Indian tribe's favor for future tax years. 440 F.3d at 1208. This court determined that the amendment mooted the plaintiff's request for prospective injunctive relief for tax years after the statute's effective date, because the amendment "[gave] the Nation all that it sought to achieve through its injunctive action." *Id.* However, we determined that a live controversy still existed regarding the Nation's claims for damages in connection with the tax years before the statute's effective date. *Id.* (citing *Kirchberg v. Feenstra*, 450 U.S. 455, 459 n. 6 (1981)). The court also determined that the claim for injunctive relief with respect to the most recent tax year still presented a live controversy because the parties disputed the effective date of the amended statute, so declaratory and/or injunctive relief could conceivably be appropriate. *Id.* In contrast, Ms. Carpenter points to no injury analogous to the injuries in *Jicarilla*. Apart from the New Mexico test payments, which we have already determined are not injuries stemming from § 1005's racial distinctions, Ms. Carpenter has not identified any actual monetary harm from past payments made under the challenged statute or a present dispute over payments.

    Ms. Carpenter also relies on *Serna v. Portales Municipal Schools*, 499 F.2d 1147, 1154 (10th Cir. 1974), to assert "the trial court had a duty to fashion a program which

would provide adequate relief."[11] Appellant's Br. at 9. In *Serna*, we affirmed the district

court's determination that a school district had violated the Civil Rights Act by depriving

children with Spanish surnames appropriate education and upheld the remedial plan the

district court had ordered to remedy the violation. 499 F.2d at 1152–54. There was no

suggestion that the matter had become moot because children with Spanish surnames

actually had been deprived of appropriate education. *Id.* at 1154 ("Each minor child is

allegedly a student in the Portales schools or was excluded therefrom. The complaint

alleges that those and all Spanish surnamed school children have been subject to

discrimination by the school district."). Here, Appellees never denied Ms. Carpenter

any benefit—or even any opportunity to receive a benefit—based on her race.

Ms. Carpenter also attempts to support her claim to a continuing stake in the

litigation by pointing to cases affirming courts' ability to remedy ongoing effects of past

racial discrimination. *See Swann v. Charlotte-Mecklenburg Bd. Of Educ.*, 402 U.S. 1, 15,

28 (1971); *Louisiana v. United States*, 380 U.S. 145, 154 (1965). But the cited cases

relate to a court's ability or duty to fashion relief for a civil rights violation *where there is

such a violation*. A court's broad power to *remedy* an injury does not broaden the

definition of an injury.

In another case Ms. Carpenter cites, *Vitolo v. Guzman*, 999 F.3d 353, 359 (6th Cir.

2021), the Sixth Circuit enjoined administration of a COVID-19 relief statute that gave

---

[11] Although the appellants unsuccessfully raised a standing issue in *Serna v. Portales Municipal Schools*, 499 F.2d 1147, 1152 (10th Cir. 1974), Ms. Carpenter does not cite to that portion of the opinion.

priority treatment to female applicants and applicants of certain races, even though the

priority period had expired and the Small Business Administration ("SBA") would

process *future* requests in the order they were received. The court discerned a live

controversy because SBA was still processing the priority applications first, creating a

risk that the funds would be depleted before the non-priority plaintiffs' applications were

processed—a problem a court could remedy by ordering the SBA to process all the

applications in the order in which they were received. *Id.* at 359–60. In contrast to those

plaintiffs, Ms. Carpenter is not at risk of losing any opportunity to receive a benefit if the

court does not intervene. Upon repeal of § 1005, no benefits are available irrespective of

race.

      Ms. Carpenter has failed to show that she suffered or continues to suffer an injury

in fact.[12] Ms. Carpenter, a rancher in Wyoming, was not eligible for the New Mexico test

payments regardless of her race. She fails to otherwise articulate an injury in fact, instead

arguing that she may identify such an injury if given the opportunity to engage in

---

    [12] Ms. Carpenter also objects to another court's characterization of the test
payments as de minimis. The district court here did not characterize the payments as
de minimis or suggest that the case was moot due to the minimal nature of Ms.
Carpenter's injuries, nor is it necessary to do so to find this case moot. This case is
moot not because Ms. Carpenter's injuries were insignificant but because she
suffered no injury at all.

discovery. Thus, Ms. Carpenter has failed to plead one of the three elements of

Article III's case-or-controversy requirement.[13]

## 2.    Voluntary Cessation

Courts will find an exception to mootness when a defendant voluntarily ceases an

allegedly unlawful practice but is free to resume its challenged practice at any time.

*Rio Grande Silvery Minnow*, 601 F.3d at 1115. "[T]his exception exists to counteract the

possibility of a defendant ceasing illegal action long enough to render a lawsuit moot and

then resuming the illegal conduct." *Id.* (quotation marks omitted). However, the

voluntary cessation doctrine does not overcome mootness where "(1) it can be said with

assurance that there is no reasonable expectation that the alleged violation will recur, and

(2) interim relief or events have completely and irrevocably eradicated the effects of the

alleged violation." *Id.* (quoting *Cnty. of L. A. v. Davis,* 440 U.S. 625, 631 (1979)).

"[V]oluntary cessation of offensive conduct will only moot litigation if it is clear that the

defendant has not changed course simply to deprive the court of jurisdiction." *Id.*

(alteration in original) (quoting *Nat'l Adver. Co. v. City of Miami,* 402 F.3d 1329, 1333

(11th Cir. 2005) (per curiam)). "The party asserting mootness bears the '"heavy burden

of persua[ding]" the court that the challenged conduct cannot reasonably be expected to

start up again.'" *Id.* at 1116 (alteration in original) (quoting *Friends of the Earth*,

528 U.S. at 189).

---

[13] Because we conclude that Ms. Carpenter has no injury, we need not evaluate
the other two elements of Article III's case-or-controversy requirement—causation and
redressability. A non-existent injury has no cause and cannot be redressed.

Appellees contend that the voluntary cessation doctrine does not apply here because Congress, not USDA, is responsible for the intervening action, the formal recission of a law is enough to establish mootness, there is no evidence to indicate that the legislature intends to reenact § 1005, and Ms. Carpenter has not identified any lingering effects of § 1005 that will influence her relationship with USDA in the future. Ms. Carpenter cites several voluntary cessation cases in her opening brief, although her reply appears to disavow any argument based on voluntary cessation. In her reply, she argues an ongoing injury from Appellees' past conduct, rather than the prospect that the statute will be re-enacted or that Appellees will again attempt to implement it. Ms. Carpenter also expresses concern that finding this case moot would provide "a judicial roadmap to race discrimination" because government actors could freely engage in race-based discrimination until courts enjoin them without facing accountability for the constitutional injuries they caused in the interim. Reply at 25.

Appellees have carried their burden and persuaded us that the voluntary cessation doctrine to defeat mootness does not apply. This court has held that when a legislature repeals or amends a statute after it is judicially challenged, the voluntary cessation exception does not apply unless there is evidence indicating "that the legislature intends to reenact the prior version of the disputed statute." *Camfield v. City of Oklahoma City*, 248 F.3d 1214, 1222–24 (10th Cir. 2001) (holding constitutional challenge to censorship of a film under Oklahoma's child pornography statute became moot when the Oklahoma legislature revised the law to remove the challenged language and there was no evidence the legislature intended to reenact the former version of the statute); *see* Wright *et al.*,

13C Fed. Prac. & Proc. § 3533.6 (3d ed. 2018) ("Most cases that deny mootness [based

on voluntary cessation] rely on clear showings of reluctant submission [by government

actors] and a desire to return to the old ways."). There is no indication in the Complaint

or any exhibit in this case that Congress intends to re-enact the provisions of § 1005, nor

is it plausible Congress would do so given that the emergency that prompted § 1005 in

the first place—the sudden economic devastation caused by the COVID-19 pandemic—

no longer exists. Thus, the voluntary cessation doctrine would not save Ms. Carpenter's

claims from mootness.

**3.      Prudential Mootness**

Appellees suggest that even if there were an Article III case or controversy,

prudential mootness should apply. "[A] court may dismiss [a] case [that is not moot

under Article III] under the prudential-mootness doctrine if the case is so attenuated that

considerations of prudence and comity for coordinate branches of government counsel

the court to stay its hand, and to withhold relief it has the power to grant." *Rio Grande*

*Silvery Minnow*, 601 F.3d at 1121 (internal quotation marks omitted). Because there is no

Article III case or controversy, we need not reach prudential mootness.

**III.      CONCLUSION**

The district court properly dismissed Ms. Carpenter's claims as moot because she

has not adequately pleaded any equal protection injury. We therefore AFFIRM the

dismissal of Ms. Carpenter's Complaint. We AFFIRM the dismissal of Ms. Rogers'

complaint on the same basis.

Entered for the Court


Carolyn B. McHugh
Circuit Judge

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157
Clerk@ca10.uscourts.gov

Christopher M. Wolpert                                                Jane K. Castro
Clerk of Court                                                    Chief Deputy Clerk

October 16, 2023

Braden Boucek
Southeastern Legal Foundation
560 West Crossville Road, Suite 104
Roswell, GA 30075

William Edward Trachman
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, CO 80227

RE:   22-8079, 23-1122, Carpenter v. Vilsack, et al
      Dist/Ag docket: 2:21-CV-00103-NDF

Dear Counsel:

Enclosed is a copy of the order and judgment issued today in this matter. The court has
entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40(a)(1), any petition for rehearing must be filed within
14 days after entry of judgment. Please note, however, that if the appeal is a civil case in
which the United States or its officer or agency is a party, any petition for rehearing must
be filed within 45 days after entry of judgment. Parties should consult both the Federal
Rules and local rules of this court with regard to applicable standards and requirements.
In particular, petitions for rehearing may not exceed 3900 words or 15 pages in length,
and no answer is permitted unless the court enters an order requiring a response. *See* Fed.
R. App. P. Rules 35 and 40, and 10th Cir. R.35 and 40 for further information governing
petitions for rehearing.

Please contact this office if you have questions.

                                        Sincerely,


                                        Christopher M. Wolpert
                                        Clerk of Court

cc:    Jeffrey Eric Sandberg
         Kyla Snow
         Abby Christine Wright


CMW/jjh